UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

RICARDO VELAZQUEZ,

            Petitioner,

v.                              Case No:  3:12-cv-1340-J-34PDB

SECRETARY, FLORIDA DEPARTMENT
OF CORRECTIONS and FLORIDA
ATTORNEY GENERAL,

            Respondents.

_____/

## ORDER

### I.    Status

       Petitioner Ricardo Velazquez ("Velazquez" or "Petitioner"),
an inmate of the Florida penal system, initiated this action by
filing a *pro se* Petition for Writ of Habeas Corpus under 28 U.S.C.
§ 2254 (Doc. 1, filed December 10, 2012).  His amended Petition is
presently before the Court (Doc. 6, filed January 24, 2013;
Petition).   Velazquez challenges convictions from the Fourth
Judicial Circuit, in and for Clay County Florida, for attempted
first degree murder with a firearm and kidnaping.  Id. at 2.
Respondents submitted a memorandum in opposition to the petition
(Doc. 16), and Velazquez relies on his assertions in the Petition
in lieu of filing a reply (Doc. 18).

### II.  Procedural History

       On November 5, 2008, the state charged Velazquez by amended
information with attempted first-degree murder (count one) and

kidnaping with a firearm (count two) (Ex. H).[1]  At the conclusion of the trial, the jury found Velazquez guilty as charged on both counts (Ex. K).   The court sentenced Velazquez to life in prison on each count with twenty-five years as the minimum mandatory sentence (Ex. N; Ex. O).   Florida's First District Court of Appeal affirmed the convictions and sentences *per curiam* (Ex. R); Velazquez v. State, 31 So. 3d 786 (Fla. 1st DCA 2010).

On September 1, 2010, Velazquez filed a state petition for writ of habeas corpus alleging that appellate counsel was ineffective for failing to argue on appeal that a fundamental error occurred when the trial court read an erroneous jury instruction (Ex. T).   Florida's First District Court of Appeal denied the petition on the merits (Ex. U).

On December 30, 2010, Velazquez filed a motion for post-conviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure ("Rule 3.850 Motion") (Ex. X).   In the Rule 3.850 Motion, Velazquez raised six claims of ineffective assistance of counsel and one claim of newly discovered evidence. Id.   The post-conviction court denied the motion without an evidentiary hearing (Ex. Y).   Florida's First District Court of

---

[1] Unless otherwise indicated, references to exhibits are to those filed by Respondent on November 13, 2013 (Doc. 14).   The trial transcript, located in Respondent's Exhibit I, is cited as (T. at ___).

Appeal *per curiam* affirmed (Ex. BB); Velazquez v. State, 93 So. 3d 1020 (Fla. 1st DCA 2012).

Velazquez filed his original federal petition for writ of habeas corpus on December 10, 2012, and the instant Petition on January 24, 2013 (Doc. 6).

### III. One-Year Limitations Period

The Petition appears to be timely filed within the one-year limitations period. See 28 U.S.C. § 2244(d); (Doc. 12 at 6-7).

### IV.  Evidentiary Hearing

"In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Id.

The pertinent facts of this case are fully developed in the record before the Court. Upon due consideration of the pleadings and the state court record, each claim is denied. Because this Court can "adequately assess [Valezquez'] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

### V.   Standard of Review

The Court will analyze Velazquez's claims under 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Section 2254(d) states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Thus, 28 U.S.C. § 2254(d) "bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)." Harrington v. Richter, 562 U.S. 86, 98 (2011). As the United States Supreme Court stated, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 134 S. Ct. 10, 16 (2013). This standard of review is described as follows:

> Under AEDPA, when the state court has adjudicated the petitioner's claim on the merits, a federal court may not grant habeas relief unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the

4

United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," id. § 2254(d)(2). "Under § 2254(d)(1)'s 'contrary to' clause, we grant relief only 'if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts.'" Jones v. GDCP Warden, 753 F.3d 1171, 1182(11th Cir. 2014) (quoting Williams v. Taylor, 529 U.S. 362, 413, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000)). "Under § 2254(d)(1)'s 'unreasonable application' clause, we grant relief only 'if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" Id. (quoting Williams, 529 U.S. at 413, 120 S. Ct. 1495).

For § 2254(d), clearly established federal law includes only the holdings of the Supreme Court — not Supreme Court dicta, nor the opinions of [a circuit court]. White v. Woodall,- U.S. -, 134 S. Ct. 1697, 1702, 188 L.Ed.2d 698 (2014). To clear the § 2254(d) hurdle, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 562 U.S. 86, 131 S. Ct.770, 786-87, 178 L.Ed.2d 624 (2011). "[A]n 'unreasonable application of' [Supreme Court] holdings must be 'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." Woodall, 134 S. Ct. at 1702 (quoting Lockyer v. Andrade, 538 U.S. 63, 75-76, 123 S. Ct. 1166, 155 L.Ed.2d 144 (2003)). A state court need not cite or even be aware of Supreme Court cases "so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 154

> L. Ed. 2d 263 (2002); accord Richter, 131 S.
> Ct. at 784.
>
> "AEDPA thus imposes a highly deferential
> standard for evaluating state-court rulings
> and demands that state-court decisions be
> given the benefit of the doubt." Renico v.
> Lett, 559 U.S. 766, 773, 130 S. Ct. 1855, 176
> L.Ed.2d 678 (2010) (citations and internal
> quotation marks omitted). And when a claim
> implicates both AEDPA and Strickland, our
> review is doubly deferential. Richter, 131 S.
> Ct. at 788 ("The standards created by
> Strickland and § 2254(d) are both highly
> deferential, and when the two apply in tandem,
> review is doubly so." (citations and internal
> quotation marks omitted)). [A petitioner] must
> establish that no fairminded jurist would have
> reached the Florida court's conclusion. See
> Richter, 131 S. Ct. at 786-87; Holsey v.
> Warden, Ga. Diagnostic Prison, 694 F.3d 1230,
> 1257-58 (11th Cir. 2012). "If this standard is
> difficult to meet, that is because it was
> meant to be." Richter, 131 S. Ct. at 786....

Taylor v. Sec'y, Fla. Dep't of Corr., 760 F.3d 1284, 1293-94 (11th

Cir. 2014); see also Hittson v. GDCP Warden, 759 F.3d 1210, 1230

(11th Cir. 2014).

Finally, for a state court's resolution of a claim to be an

adjudication on the merits, so that the state court's determination

will be entitled to deference for purposes of federal habeas corpus

review under AEDPA, all that is required is a rejection of the

claim on the merits, not an opinion that explains the state court's

rationale for such a ruling. Hittson, 759 F.3d at 1232 ("[T]here

is no AEDPA requirement that a state court explain its reasons for

rejecting a claim[.]"); Richter, 131 S. Ct. at 785 (holding that

§ 2254(d) does not require a state court to give reasons before

its decision can be deemed to have been adjudicated on the merits);

Wright v. Sec'y for the Dep't of Corr., 278 F.3d 1245, 1255 (11th

Cir. 2002). Thus, to the extent Velazquez's claims were adjudicated

on the merits in the state courts, they must be evaluated under §

2254(d).

## VI.   Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective

assistance of counsel. That right is denied when a defense

counsel's performance falls below an objective standard of

reasonableness and thereby prejudices the defense." Yarborough v.

Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith,

539 U.S. 510, 521 (2003) and Strickland v. Washington, 466 U.S.

668, 687 (1984)).

> To establish deficient performance, a person
> challenging a conviction must show that
> "counsel's representation fell below an
> objective standard of reasonableness."
> [Strickland,] 466 U.S. at 688, 104 S. Ct.
> 2052. A court considering a claim of
> ineffective assistance must apply a "strong
> presumption" that counsel's representation
> was within the "wide range" of reasonable
> professional assistance. Id., at 689, 104 S.
> Ct. 2052. The challenger's burden is to show
> "that counsel made errors so serious that
> counsel was not functioning as the 'counsel'
> guaranteed the defendant by the Sixth
> Amendment." Id., at 687, 104 S. Ct. 2052.
>
>
> With respect to prejudice, a challenger must
> demonstrate "a reasonable probability that,
> but for counsel's unprofessional errors, the
> result of the proceeding would have been

> different. A reasonable probability is a
> probability sufficient to undermine
> confidence in the outcome." Id., at 694, 104
> S. Ct. 2052. It is not enough "to show that
> the errors had some conceivable effect on the
> outcome of the proceeding." Id., at 693, 104
> S. Ct. 2052. Counsel's errors must be "so
> serious as to deprive the defendant of a fair
> trial, a trial whose result is reliable." Id.,
> at 687, 104 S. Ct. 2052.

Richter, 131 S. Ct. at 787-88.

Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Ward v. Hall, 592 F.3d 1144, 1163 (11th Cir. 2010)(citation omitted). "Surmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010).

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> "[T]he standard for judging counsel's
> representation is a most deferential one."
> Richter, - U.S. at -, 131 S. Ct. at 788. But
> "[e]stablishing that a state court's
> application of Strickland was unreasonable
> under § 2254(d) is all the more difficult. The
> standards created by Strickland and § 2254(d)
> are both highly deferential, and when the two
> apply in tandem, review is doubly so." Id.
> (citations and quotation marks omitted). "The
> question is not whether a federal court
> believes the state court's determination under
> the Strickland standard was incorrect but
> whether that determination was unreasonable -
> a substantially higher threshold." Knowles v.
> Mirzayance, 556 U.S. 111, 123, 129 S. Ct.
> 1411, 1420, 173 L. Ed. 2d 251 (2009)

> (quotation marks omitted). If there is "any
> reasonable argument that counsel satisfied
> Strickland's deferential standard," then a
> federal court may not disturb a state-court
> decision denying the claim. <u>Richter</u>, - U.S. at
> -, 131 S. Ct. at 788.

<u>Hittson</u>, 759 F.3d at 1248; <u>Knowles v. Mirzayance</u>, 556 U.S. 111,
123 (2009); <u>see also</u> <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309
(11th Cir. 2004) ("In addition to the deference to counsel's
performance mandated by Strickland, the AEDPA adds another layer
of deference--this one to a state court's decision--when we are
considering whether to grant federal habeas relief from a state
court's decision.").

## VII. Findings of Fact and Conclusions of Law

Each of Velazquez's seven claims was raised in his Rule 3.850
Motion (Ex. X), and the state post-conviction court denied relief
as to each claim in a detailed opinion (Ex. Y). Velazquez appealed
the decision to Florida's First District Court of Appeal which
affirmed the denials *per curiam* (Ex. Z; Ex. BB). Accordingly, the
claims are exhausted and will be reviewed under the deferential
standards set forth in the AEDPA. <u>See</u> 28 U.S.C. § 2254(b)(a)(A).

Given the record in the instant action, the appellate court
may have affirmed the denial of Velazquez's motion for post-
conviction relief on the merits. If the appellate court addressed
the merits, Velazquez would not be entitled to relief because the
state courts' adjudications of his claims are entitled to deference
under AEDPA. After a review of the record and the applicable law,

the Court concludes that the state courts' adjudications of Velazquez's claims were not contrary to clearly established federal law and did not involve an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  Thus, Velazquez is not entitled to relief.

Moreover, even assuming that the appellate court did not affirm the denial of the post-conviction motion on the merits or that the state courts' adjudications of the claims are not entitled to deference under AEDPA, for the reasons set forth below, Velazquez's claims do not warrant habeas relief.

## A.   Claim One

Velazquez asserts that defense counsel ("Counsel") was ineffective for failing to object to an improper jury instruction (Doc. 6 at 8).  Specifically, he contends the attempted voluntary manslaughter instruction read to the jury at trial added an element of intent to kill, "and that the jury was misled to believe that in order for the State to establish the lesser offense of Attempted Voluntary Manslaughter by an intentional act, the State had the burden to prove that he intended to kill or cause death." Id. at 8-9.  Velazquez urges that he suffered prejudice from the defective instruction because he was found guilty of first-degree murder, and the jury "may not have returned a verdict as to the lesser crime of Attempted Voluntary Manslaughter because it found insufficient proof of Petitioner['s] intent to kill." Id. at 10.

Velazquez raised this claim in his Rule 3.850 Motion (Ex. X). In addressing the claim, the post-conviction court noted that Velazquez's ineffective assistance claim was based on a recent Florida Supreme Court decision finding Florida's standard jury instruction on manslaughter to be defective. Id. at 2 (citing State v. Montgomery, 39 So. 3d 252 (Fla. 2010)). The post-conviction court recognized that, "[b]ased on the holding in Montgomery, this Court's instruction on the elements of voluntary attempted manslaughter was incorrect, as it improperly suggested that the defendant was required to have an intent to kill the victim before being convicted of attempted voluntary manslaughter." Id. at 2-3. However, the post-conviction court denied relief on the claim based on its conclusion that the improper jury instruction was harmless beyond a reasonable doubt due to the quality and magnitude of evidence against Velazquez. Id. at 2-5.

Respondent asserts that Counsel's performance was not deficient because Montgomery was issued after Velazquez's jury trial, and Counsel was not deficient for failing to anticipate a change in the law (Doc. 12 at 27). Indeed, Velazquez's trial began on November 10, 2008 (T. at 1). The opinion on which Velazquez bases Claim One was not issued until April 8, 2010. Montgomery, 39 So. 3d at 252. Moreover, although in Montgomery, the Florida Supreme Court approved the decision of the First District Court of Appeal in Montgomery v. State, 70 So.3d 603 (Fla. 1st DCA 2009)

(addressing, the 2006 version of the manslaughter-by-act jury instruction), the First District also issued its opinion *after* Petitioner's trial.  Thus, the Court agrees that Velazquez has not shown that Counsel's performance was deficient.

At trial, the judge read the following instruction for attempted voluntary manslaughter:

> To prove the crime of attempted voluntary manslaughter, the state must prove the following element beyond a reasonable doubt. Ricardo Velazquez committed an act which was intended to cause the death of Josue Torres and would have resulted in the death of Josue Torres except that someone prevented Ricardo Velazquez from killing Josue Torres or he failed to do so.
>
> However, the defendant cannot be guilty of attempted voluntary manslaughter if the attempted killing was either justifiable or excusable as I have previously explained those terms. It is not an attempt to commit a manslaughter if the defendant abandoned the attempt to commit the offense or otherwise prevented its commission under circumstances indicating a complete and voluntary renunciation of his criminal purpose.
>
> In order to convict of attempted voluntary manslaughter it is not necessary for the state to prove that the defendant had a premeditated intent to cause death.

(T. at 305-06).  This instruction is substantially identical to Florida's 2008 standard jury instruction for attempted voluntary manslaughter.  See Fla. Pattern Jury Inst. Crim. 6.6 (2008).

The Eleventh Circuit recognizes that "[t]o provide effective representation, lawyers are not required to 'make arguments based

12

on predictions of how the law may develop.'" <u>Pimental v. Fla. Dep't</u> <u>of Corr.</u>, 560 F. App'x 942, 944 (11th Cir. 2014) (citing <u>Spaziano</u> <u>v. Singletary</u>, 36 F.3d 1028, 1039 (11th Cir. 1994)); <u>see also</u> <u>Funchess v. Wainwright</u>, 772 F.2d 683, 691 (11th Cir. 1985) ("The failure of counsel to anticipate that an otherwise valid jury instruction would later be deemed improper by the state judiciary does not constitute ineffective assistance of counsel."). Here, Counsel's failure to anticipate a change in Florida's pattern jury instruction for attempted voluntary manslaughter "simply does not constitute ineffective assistance of counsel." <u>Funchess</u>, 772 F.2d at 691; <u>Jackson v. Herring</u>, 42 F.3d 1350, 1359 (11th Cir. 1995) ("To be effective within the bounds set by <u>Strickland</u>, an attorney need not anticipate changes in the law."). Because <u>Strickland</u> does not require counsel to anticipate changes in the law, Velazquez does not establish that Counsel's performance was deficient.

Respondent also asserts that the record supports the state court's conclusion that Velazquez cannot demonstrate <u>Strickland</u> prejudice (Doc. 12 at 27). Upon review of the record, the Court concludes that Petitioner has made no showing of prejudice.

Petitioner's claim of prejudice depends on his contention that the jury "may not have returned a verdict as to the lesser crime of Attempted Voluntary Manslaughter because it found insufficient proof of Petitioner['s] intent to kill." Petition at

10.   This contention is simply frivolous as it ignores the fact that the jury unanimously convicted Petitioner of attempted first degree murder (Ex. K).   The trial court instructed the jury that to convict Petitioner of attempted first degree murder the state was required to prove first that "[Petitioner] did some act intended to cause the death of [the victim] that went beyond just thinking about it." (T. at 301).   The jury was further instructed that if it found the evidence insufficient to prove the crime of attempted first degree murder beyond a reasonable doubt, then it should consider the lesser included offenses of attempted second degree murder and attempted voluntary manslaughter (T. at 304, 314-316).   However, because the jury concluded that the state proved Petitioner's intent to cause the death of the victim beyond a reasonable doubt, it had no cause to consider the proof as to either lesser included offense.   Moreover, because the jury found sufficient evidence of intent to prove the charge of attempted first degree murder, there is no reasonable possibility that its failure to return a verdict on the charge of involuntary manslaughter was a result of finding "insufficient proof of Petitioner['s] intent to kill.   Petitioner has failed to show either deficient performance or prejudice and as such, his request for habeas relief as to this claim is due to be denied.

## B.   Claim Two

Next, Velazquez asserts that Counsel failed to conduct an adequate pretrial investigation to establish a reasonable doubt that he committed the crimes (Doc. 6 at 11).  He raised this claim in his Rule 3.850 motion, and the post-conviction court summarized the events surrounding Velazquez's arrest and conviction as follows:

> The conviction in this case arises out of events of September 5, 2005.  On that date, Defendant; the co-defendant Juan Vazquez; and another individual, Gerry Centeno, traveled to the apartment complex of the victim, Josue Torres, whom they suspected had recently robbed the apartment of Mr. Vazquez. According to Defendant's Motion, the victim arrived at the apartment complex after work. While the victim was still in the car, "two men approached the victim," one armed with a firearm.  At gun point, "one of the men who had approached the victim, instructed the victim to get out of his car and to get into [their] vehicle."  The victim was placed in the front seat, Mr. Centeno was driving, and Defendant and Mr. Vazquez were in the backseat.  During the drive, the victim attempted to escape by pulling the wheel, which caused the vehicle to crash.  As he tried to get out of the car, he was shot twice in the back.  Both Defendant and Mr. Vazquez fled the scene.  Defendant claims that it was the co-defendant, Mr. Vazquez, who shot the victim and that he did not participate at all.
>
> At trial, the victim, Mr. Vazquez, and Mr. Centeno each testified that it was Defendant who fired the weapon.  Specifically, the victim testified that it was Defendant who initially approached him and ordered him at gunpoint to get into their vehicle.  The victim testified that Defendant pointed the firearm at him during the drive and threatened

> to shoot him if he tried to exit the vehicle.
> At one point, the victim testified that
> Defendant noticed that the victim had a cell-
> phone and punched him in the face and took it
> away from him.  Fearing for his life, the
> victim intentionally caused a car crash and
> attempted to flee at which point he was shot
> twice.  The first shot hit him in the shoulder
> and the second hit him in his back permanently
> paralyzing him from the waist down.  At trial,
> the victim positively identified Defendant as
> the individual who shot him.

(Ex. Y at 3-4) (internal citations to trial transcript and record omitted).  Velazquez now asserts that Counsel performed deficiently by failing to: (1) retain an investigator to visit the victim's apartment complex to find witnesses to the alleged kidnaping; (2) interview individuals in the other vehicles involved in the automobile crash; and (3) obtain the victim's medical records to verify that he was injured as badly as claimed (Doc. 6 at 11-12). The Court will address each contention below.

### 1.   Failure to locate witnesses to the kidnaping

Velazquez asserts that, had Counsel investigated the victim's apartment complex, he may have found witnesses who observed the kidnaping (Doc. 6 at 12).  He claims that such witnesses would have testified that Velazquez did not force the victim into the Ford Expedition and that he (Velazquez) sat in the Expedition's passenger seat behind the front passenger. Id.  Velazquez urges that "this would have shown that the Petitioner was not the shooter as the victim testified that the shooter was in the passenger seat behind the driver." Id.

16

The post-conviction court denied relief on this claim stating:

> Defendant asserts that counsel should have visited the crime scene to try and discover witnesses who observed the initial kidnapping of the victim. Significantly, Defendant does not allege that he is aware of any specific witnesses that counsel failed to interview. Rather, Defendant merely speculates that if counsel went to the scene for purposes of investigation, such a potential witness may have been discovered. Mere conclusory statements are insufficient to establish a prima facie claim for relief and do not entitle a defendant to an evidentiary hearing. Freeman v. State, 761 So. 2d 1055, 1061 (Fla. 2000). When alleging failure of counsel to investigate a witness, the defendant must state with particularity the identity of the witness, the substance of the expected testimony, and how the omission of this evidence prejudiced the outcome of the case. Highsmith v. State, 617 So. 2d 825, 826 (Fla. 1st DCA 1993).
>
> In the instant case, Defendant is merely speculating as to the existence of such witnesses and has failed to state with particularity the identity of any particular witness. Furthermore, even if such a witness was located, Defendant has failed to demonstrate that his or her testimony would have made the result of the proceeding different. As alleged in his Motion, the potential witness, if any, would have only seen the initial encounter with the victim. As discussed above, the State presented substantial evidence, corroborated by the victim, co-defendant and driver of the vehicle, as to Defendant's culpable conduct during the drive (after the initial encounter with the victim) and that Defendant was the individual who shot the victim. For all the reasons above, Defendant is denied relief as to his first sub-claim in ground two.

(Ex. Y at 5-6).

Respondent asserts that the state courts' adjudication of this claim is supported by the record and legally correct under Strickland because Velazquez's assertions are "wholly speculative in nature" (Doc. 12 at 34). Indeed, Velazquez presents no evidence to substantiate his claim that anyone witnessed the victim's kidnaping or that anyone who did would have testified as he now asserts. Habeas courts generally view ineffective assistance claims with great caution when the only evidence of a missing witness' testimony comes from the petitioner. See Schwander v. Blackburn, 750 F.2d 494, 500 (5th Cir. 1985). Instead, evidence of a putative witness' testimony "must generally be presented in the form of actual testimony by the witness or on affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." United States v. Ashimi, 932 F.2d 643, 650 (7th Cir. 1991)(footnotes omitted); Streeter v. United States, 335 F. App'x 859, 864 (11th Cir. 2009)("[M]ere speculation that missing witnesses would have been helpful is insufficient to meet the petitioner's burden of proof.")(citing Johnson v. Alabama, 256 F.3d 1156, 1187 (11th Cir. 2001)). Velazquez presents no evidence of the existence of any witness, much less actual testimony or affidavit from any witness at the victim's apartment complex. Thus, he has shown neither defective performance nor

18

prejudice under Strickland. 466 U.S. at 691–92.  Relief as to this claim is properly denied.

### 2. Failure to interview witnesses to the traffic accident

At trial, the victim testified that he intentionally caused the Ford Expedition to crash into other vehicles in order to escape his kidnappers (Doc. 6 at 12; T. at 53-56).  Velazquez asserts that Counsel was ineffective for failing to call the witnesses listed in the accident report to testify (Doc. 6 at 12).  He speculates that the witnesses would have testified that he (Velazquez) was the first person to exit the vehicle through the right rear passenger door, suggesting that he sat directly behind the victim. Id. Velazquez urges that doing so would have caused jurors to consider "conflicting statements by the victim" as to where Velazquez sat in the truck and perhaps caused them to conclude that Velazquez's co-defendant was the actual shooter. Id.

In denying this claim, the post-conviction court noted that Velazquez "once again appears to be speculating as to what testimony these witnesses would have provided." (Ex. Y at 6) (emphasis added).  The court also concluded that Velazquez could not demonstrate prejudice due to the magnitude of evidence presented at trial that Velazquez was the shooter. Id.  The Court agrees that Velazquez's assertions that any witnesses would have testified as claimed and that the testimony would have led to a different verdict is merely speculation insufficient to support

his ineffective assistance claim. <u>See</u> discussion <u>supra</u> Claim One. Moreover, at trial, three witnesses identified Velazquez as the shooter (T. at 61, 107, 153).  The state court's adjudication of this claim is fully supported by the record.

### 3.   Failure to offer the victim's medical records into evidence

Velazquez asserts that Counsel was ineffective for failing to obtain the victim's medical records to determine the severity of his injuries (Doc. 6 at 13).  Specifically, he claims that the victim's "testimony was self-serving as it supports his version of events and does not actually show that as a result of the shooting that his medical condition resulted in him being confined to a wheelchair or that he [was partially paralyzed]." <u>Id.</u>  Presumably, Velazquez believes he suffered prejudice from the records' omission because he received a twenty-five year minimum mandatory sentence due to the victim having sustained "great bodily harm."[2]

The post-conviction court denied this claim, noting that the victim testified that Velazquez shot him twice in the back and that he is now partially paralyzed and confined to a wheelchair as a result (Ex. Y at 6-7).  Although Velazquez expresses his belief that not all the victim's injuries resulted from the shooting, he

---

[2] Under Florida law, a twenty-five year mandatory sentence is imposed upon a person who uses certain types of firearms in a felony and "during the course of the commission of the felony such person discharged [the firearm] . . . and as a result of the discharge, death or great bodily harm was inflicted upon any person[.]" Fla. Stat. § 775.087(2)(a)(3) (2008).

provides no evidence to support this claim. Velazquez's unsupported and speculative assertions do not entitle him to habeas relief. See Hill v. Lockhart, 474 U.S. 52 (1985) (conclusory allegations of ineffective assistance of counsel are insufficient to raise a constitutional issue); Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (vague, conclusory, or unsupported allegations cannot support an ineffective assistance of counsel claim). Moreover, reasonable counsel could have concluded that evidence of two gunshot wounds to the victim's back, standing alone, constitutes "great bodily harm" sufficient to satisfy § 775.087. See Owens v. State, 289 So. 2d 472, 474 (Fla. 2d DCA 1974) ("Great bodily harm defines itself and means great as distinguished from slight, trivial, minor, or moderate harm[.]"). Thus, Velazquez has failed to show that Counsel rendered deficient performance by failing to present the victim's medical records.

## C.    Claim Three

Velazquez asserts that Counsel was ineffective because the Public Defender's Office represented victim Josue Torres and co-defendant Juan Vazquez in a previous criminal matter, and it was a conflict of interest for the Office to also represent Velazquez (Doc. 6 at 14). Velazquez contends that the Public Defender's Office received confidential information from Torres and Vazquez

during its prior representation of these witnesses.[3] He urges that "[non-conflicted] counsel would have been able to cross examine the victim and witnesses about the previous criminal activities that they had been involved in." Id. at 15.

The post-conviction court recognized that "a public defender's office is the functional equivalent of a law firm" and that different attorneys in the same office cannot represent defendants with conflicting interests (Ex. Y at 7)(citing Bouie v. State, 559 So. 2d 1113, 1115 (Fla. 1990)). However, the court determined that Velazquez failed to establish the existence of an actual conflict of interest or, even if one did exist, that any such conflict adversely affected Counsel's performance. Id. The court explained:

> In the instant case, Defendant does not claim that his defense counsel personally represented these two witnesses, but rather that another attorney from the Public Defender's Office represented them in a prior criminal matter. Further, Defendant has not alleged what the nature of the representation was or when it occurred, other than that it was in a previous criminal matter. Therefore, the Court finds Defendant has not demonstrated that there was an actual conflict of interest at the time he was represented.

> Furthermore, even if Defendant could successfully demonstrate the existence of an actual conflict, he cannot demonstrate that this conflict had an adverse effect upon his lawyer's representation. As to this prong, Defendant alleges that if the Office of the

---

[3] Velazquez does not reveal the nature of any "confidential information" allegedly received by Counsel.

Public Defender would have been excluded from representation, "new counsel would have been able to cross-examine the victim and witnesses about previous criminal activities that they had been involved in." Defendant further asserts that "[t]his would have resulted in the Defendant being found not guilty. Especially after the jury hearing that the witnesses used by the State had previously been involved in some very questionable activities in the past...." <u>Id.</u>

Having reviewed the record, the Court finds that counsel aggressively questioned and impeached both witnesses extensively about their prior criminal history on cross-examination. Therefore, assuming *arguendo* an actual conflict did exist, Defendant has failed to demonstrate that the prevented adequate cross-examination of the witnesses. Consequently, Defendant has failed to establish either an actual conflict of interest or that the conflict adversely affected counsel's performance. <u>Quince v. State</u>, 732 So. 2d 1059, 1065 (Fla. 1999). Accordingly, Defendant's third ground for relief is denied.

(Ex. Y at 7-8) (citations to the record omitted).  A review of the record fully supports the state court's conclusions that Velazquez failed to show either the existence of a conflict or a resulting adverse effect on Counsel's representation.

The United States Supreme Court recognizes that "the mere possibility" of a conflict of interest does not warrant a conclusion that a defendant was deprived of his right to counsel. <u>Cuyler v. Sullivan</u>, 446 U.S. 335, 348-49 (1980).  Rather, a petitioner must demonstrate that an "actual" conflict of interest

adversely affected his lawyer's performance. Id. at 349.  In Smith

v. White, the Eleventh Circuit Court of Appeals explained:

> We will not find an actual conflict [of
> interest] unless appellants can point to
> specific instances in the record to suggest an
> actual conflict or impairment of their
> interests. . . . Appellants must make a
> factual showing of inconsistent interests and
> must demonstrate that the attorney made a
> choice between possible alternative courses of
> action, such as eliciting (or failing to
> elicit) evidence helpful to one client but
> harmful to the other.  If he did not make such
> a choice, the conflict remained hypothetical.

815 F.2d 1401, 1404 (11th Cir. 1987) (citations omitted); see also

Cuyler, 446 U.S. at 348-49.

Although Velazquez argues that conflict-free counsel would

have shown that the State's witnesses "had previously been involved

in some very questionable activities" (Doc. 6 at 15), he points to

no specific evidence in the record showing that Counsel refrained

from cross examining or impeaching Torres or Vazquez with their

prior criminal activity.   To the contrary, Counsel elicited

testimony that Torres had been convicted of four felonies and that

Juan Vazquez was a drug dealer currently serving a federal sentence

for conspiracy to sell cocaine and marijuana (T. at 62, 64, 82,

84).

Velazquez does not show that any alleged conflict affected

Counsel's performance or that his interests were compromised as a

result of Counsel's representation.   Accordingly, he is not

entitled to relief as to this claim.

### D.  Claim Four

Velazquez contends that Counsel was ineffective for failing to object to the prosecutor's use of perjured testimony (Doc. 6 at 16).  Specifically, he asserts that the investigating officer's report indicated that the victim told police that Velazquez sat directly behind the front-passenger seat of the Ford Expedition. Id.  However, the victim testified at trial that Velazquez sat behind the driver's seat.  Id.  Velazquez argues that the allegedly perjured testimony was material because the victim was shot by the person sitting behind the driver.[4]  Id.

---

[4] A review of the record does not support a firm conclusion that the detective's report reads as Petitioner suggests.  Detective McKinney's testimony was proffered at trial and Counsel questioned him as follows:

> Q.  What did [the victim] tell you about where the unknown gunman got into the vehicle?
>
> A.  I'm referring to my report that I wrote on that, and I believe he advised that the gunman or who he described to be who he believed to be the gunman was unknown to him but that he was sitting behind the driver of the vehicle if I believe – if I'm referring to my report correctly here.
>
> Q.  Did he tell you where a person by the – that he knew as Fat Boy was sitting?
>
> A.  Yes, sir.  He stated that the unknown gunman got in the vehicle on the passenger side directly behind him and that the individual sitting behind the

The post-conviction court denied this claim because Velazquez failed to show that the victim's testimony was false or that the prosecutor knew the testimony was false (Ex. Y at 8-9). The court pointed out that the victim testified he was on pain medication at the time of Detective McKinney's interview and did not remember his statements to the officer. Id.   The court also noted that Counsel addressed the inconsistencies regarding Velazquez's placement in the vehicle on cross-examination of the victim. Id. Finally, the post-conviction court noted that two additional witnesses testified that Velazquez sat behind the Expedition's driver and was the person who shot the victim. Id. (citing T. at 61, 107, 153).

A review of the record and applicable law supports the post-conviction court's conclusions. At most, Velazquez sets forth a claim that the victim's statements to the police on the day he was shot were inconsistent with his trial testimony. See Hays v. State of Alabama, 85 F.3d 1492, 1499 (11th Cir. 1996) (use of testimony that is inconsistent with a witness's prior testimony or that of

---

driver was an individual by the name of – he referred to as Fat Boy.

(T. at 215-16).  Detective McKinney's testimony suggests that the victim told him that both Fat Boy and the unidentified gunman sat behind the driver of the vehicle.  However, both Respondent and the state court accepted Velazquez's argument that the victim's testimony at trial regarding Velazquez's placement in the vehicle was inconsistent with Detective McKinney's report.  Accordingly, the Court will assume that the report differed from the victim's testimony at trial.

a co-defendant does not suffice to show that the proffered testimony was false).   On cross-examination, Counsel questioned the victim about his statement to the police:

> Q.   Well, you were actually interviewed by the police when you were in the hospital up there at Shands, right?
>
> A.   No, sir.
>
> Q.   You don't remember being interviewed by a police officer?
>
> A.   No, sir.
>
> Q.   An Officer W. McKinney on the same night you got shot?
>
> A.   No, sir.   I recall a detective went in there.   I was in the – they already took me to the operation room.   I was already asleep.   They got me sedate and the detective kept on asking me about Gerry Centeno, that he got something to do with it.   I say I don't know and that was it.   He say he was going to come back and see me and he never did.
>
> Q.   Was that the same night that you got shot?
>
> A.   Same night.
>
> Q.   Did you ever tell either Officer or Detective McKinney of the Clay County Sheriff's Office or anybody else who identified themselves as working for the Clay County Sheriff's Office that the individual in the back of the SUV behind the driver was an individual you knew only as, quote, Fat Boy, end quote?
>
> A.   No.   Like I say I only talk to the detective a couple seconds.   I was in the – that night that I got shot I was in the operation room already and he went in

27

there and asked me about Gerry Centeno.
I never see him again.

(T. at 98).   Given the victim's denial that he told Detective McKinney that Velazquez sat directly behind him in the Expedition and his testimony that he was sedated during (and does not remember) his interview with Detective McKinney, reasonable counsel could have decided against raising a claim that the state used perjured testimony when the victim testified at trial that Velazquez sat behind the driver.   Moreover, given the fact that two other witnesses testified that Velazquez sat behind the driver and shot the victim, Velazquez has failed to present convincing evidence that the outcome of the trial would have been different if counsel had objected as he suggests.

### E.   Claim Five

Velazquez asserts that Counsel was ineffective for advising him against testifying at trial (Doc. 6 at 18).   Specifically, he claims Counsel told him that if he testified, the jury would learn of his prior car-jacking conviction in Puerto Rico. Id.   Velazquez states that he wanted to testify that Vazquez was the actual shooter and that Vazquez held the gun as he exited the Expedition after it crashed. Id. Velazquez believes that, based upon his testimony, the jury would have found him not-guilty. Id.

The post-conviction court determined that "even assuming counsel misadvised Defendant on this issue," Valezquez could not demonstrate Strickland prejudice (Ex. Y at 9-10).   The court noted

28

that Counsel attempted to elicit testimony from other witnesses to present Velazquez's version of events. Id. at 10.  The court also concluded that due to the overwhelming evidence against Velazquez and the fact that the jury would have learned of his prior felony conviction, "there [was] not a reasonable probability that the outcome of the trial would have been any different had Defendant testified." Id.  The record supports the post-conviction court's conclusions.

Velazquez does not show prejudice from Counsel's allegedly deficient advice.  It is apparent from the trial transcript that Counsel's strategy was to imply that Vazquez, not Velazquez, was the actual shooter (T. at 67, 71).  Counsel elicited testimony that Vazquez owned the semi-automatic revolver used in the shooting and that he helped arrange the kidnaping because he was angry with the victim. Id. at 113, 122, 123, 128.  Vazquez also admitted that he hoped to trade his testimony against Velazquez for a lighter sentence. Id. at 127.

The victim and two other witnesses identified Velazquez as the shooter (T. at 61, 107, 153).  Moreover, had he testified, the jury would have learned that Velazquez was a convicted felon. See Fla. Stat. § 90.610(a)("A party may attack the credibility of any witness, including an accused, by evidence that the witness has been convicted of a crime if the crime was punishable by death or imprisonment in excess of 1 year under the law under which the witness

was convicted, or if the crime involved dishonesty or a false statement regardless of the punishment[.]"). Given Velazquez's motivation to lie and the strong evidence against him, his self-serving testimony would have had little credibility with the jury. The magnitude and quality of the evidence against Velazquez supports the state court's conclusion that he cannot demonstrate Strickland prejudice from his failure to testify. Claim Five is due to be denied.

### F.   Claim Six

Velazquez asserts that Counsel was ineffective for "moving the trial court with an inadequate motion for judgment of acquittal[.]" (Doc. 6 at 19). He characterizes Counsel's motion as "boilerplate" and avers that Counsel should have pointed to conflicting testimony about Velazquez's position in the vehicle as grounds for a judgment of acquittal. Id. at 20.[5]  Presumably, Velazquez believes that the conflict demanded a judgment of acquittal because the victim testified he was shot by the person riding behind the driver.

The post-conviction court denied this claim as "wholly without merit," finding that "defense counsel made an entirely reasonable argument in support of the motion for judgment of acquittal" (Ex. Y at 10-11).  The post-conviction court also recognized that the mere existence of conflicting evidence does

---

[5] Counsel's argument in support of his motion for a judgment of acquittal was directed solely towards the kidnaping count (T. at 198-202).

not entitle a defendant to a judgment of acquittal since "[t]he credibility and probative force of conflicting testimony should not be determined on a motion for judgment of acquittal." (Ex. Y at 11) (quoting Lynch v. State, 293 So. 2d 44 (Fla. 1974)).  Upon review of the record, the Court agrees with the post-conviction court's conclusions.

Under Florida law, a motion for a judgment of acquittal is designed to test the sufficiency of the evidence against a defendant. Joiner v. State, 618 So.2d 174, 176 (Fla. 1993).  A trial court may not grant a motion for a judgment of acquittal "unless the evidence is such that no view which the jury may lawfully take of it favorable to the opposite party can be sustained under the law." Miller v. State, 782 So.2d 426 (Fla. 2d DCA 2001) (quoting Lynch, 293 So.2d at 45). The party moving for a judgment of acquittal admits the facts adduced in evidence and every conclusion favorable to the state which is fairly and reasonably inferable therefrom. Spinkellink v. State, 313 So.2d 666, 670 (Fla. 1975).

To prove attempted first degree murder, the state needed to prove: (1) Velazquez did some act intended to cause the victim's death; (2) he acted with a premeditated design to do so; and (3) the act would have resulted in the victim's death except that he was prevented from killing the victim or he failed to do so (T. at 301); Fla. Stat. §§ 782.04(1)(a), 777.04 (2008). In the instant

31

case, three witnesses testified that Velazquez shot the victim in the back twice as he tried to escape (T. at 61, 107, 153).  The victim testified that, prior to the shooting, Velazquez threatened to kill him if he refused to reveal the location of stolen money or tried to escape. Id. at 52-53. Vazquez and the driver of the Expedition also testified that Velazquez threatened the victim prior to the car crash. Id. at 101-02, 146. The state's evidence presented a prima facie case of the charged crimes.  Where the state has produced competent evidence to support every element of a crime, a judgment of acquittal is not proper. Gay v. State, 607 So.2d 454, 457 (Fla. 1st DCA 1992).  Velazquez presents no authority for his proposition that the evidence, even with its minor inconsistencies, could not defeat a motion for judgment of acquittal.  Reasonable counsel certainly could have decided against even arguing for judgment of acquittal.  However, he did not.  He made the motion, which not surprisingly failed.  Because this claim fails on both prongs of Strickland, Velazquez has failed to show any entitlement to relief.

### G.   Claim Seven

Velazquez asserts that on or about October 29, 2009, his appellate attorney received a letter from Vazquez stating that "he [Vazquez] was put under pressure by the State, and that he told lies at trial that had incriminated the Petitioner." (Doc. 6 at

21).[6]  Velazquez argues that he is entitled to a new trial on the basis of this newly discovered evidence.  Id. at 22.

The post-conviction court denied relief on this claim on the ground that Velazquez's evidence did not meet the threshold test for newly discovered evidence under Florida law (Ex. Y at 12) (quoting Jones v. State, 591 So. 2d 911 (Fla. 1991) ("newly discovered evidence must be of such nature that it would probably produce an acquittal on retrial.")).  Specifically, the court concluded that Velazquez could not "demonstrate that consideration of the letter would probably produce an acquittal on retrial under the newly discovered evidence standard." (Ex. Y at 12).  The court also noted that the affidavit did not provide an alternate

---

[6] In his affidavit, Vazquez attested:

> I Juan G. Vazquez would like to clear and give a statement on the record on behalf of Ricardo Velazquez.  On or about the first day of [trial] when I was call [sic] to testify as to the material facts of the case.

> Just for the record when I was call[ed] to the [witness] stand I made some incriminating statement[s] against the defendant Ricardo Velazquez with pressure from the D.A. and was [frightened] that if I didn't testify I would get a life sentence.  The record would show that I did not want to testify.  And the D.A.['s] questioning lured me to say things that was all lies[.] [T]o be honest I really don't know what really happen.

(Ex. X at 38-39).

explanation for the shooting and that Vazquez's trial statement was corroborated by other trial testimony and evidence. Id.

Velazquez does not direct this Court to any Supreme Court case or general standard establishing that claims of innocence based upon recanted testimony are cognizable on federal habeas corpus review. See Marshall v. Rodgers, 133 S. Ct. 1446, 1449 (2013) (recognizing that there is no "clearly established law" on a particular issue unless a Supreme Court case on nearly identical facts or a "general standard" from Supreme Court cases supply such law). To the contrary, the Supreme Court has stated that "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." Herrera v. Collins, 506 U.S. 390, 400 (1993); see also Jordan v. Sec'y, Dep't of Corr., 485 F.3d 1351, 1356 (11th Cir. 2007) ("For what it is worth, our precedent forbids granting habeas relief based upon a claim of actual innocence, anyway, at least in non-capital cases."). Velazquez alleges no independent constitutional violation relating to Vazquez' recantation. Accordingly, he is not entitled to federal habeas corpus relief on Claim Seven.

Any of Velazquez's allegations not specifically addressed herein have been found to be without merit.

## VII. Certificate of Appealability Pursuant to 28 U.C.S. § 2253(c)(1)[7]

Velazquez is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability ("COA"). "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, Velazquez must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003). Velazquez has not made the requisite showing in these circumstances.

Because Velazquez is not entitled to a certificate of appealability, he may not appeal *in forma pauperis*.

Therefore, it is now **ORDERED AND ADJUDGED**:

---

[7] Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." As this Court has determined that Petitioner is not entitled to habeas corpus relief, it must now consider whether Petitioner is entitled to a certificate of appealability.

1.   The Petition (Doc. 6) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE.**

2.   The Clerk of Court is directed to enter judgment denying the Petition and dismissing this case with prejudice.

3.   If Velazquez appeals the denial of the Petition, the Court denies a certificate of appealability.   Because the Court has determined that a certificate of appealability is not warranted, the **Clerk of Court** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case.   Such termination shall serve as a denial of the motion.

4.   The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE** and **ORDERED** in Jacksonville, Florida on March 18, 2016.

MARCIA MORALES HOWARD
United States District Judge

SA: OrlP-4
Copies to: Ricardo Velazquez
Counsel of Record

36